UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ZHANYBEK KUBANYCHBEKOV et al.,

Plaintiff,

v.

ANTHONY J. BLINKEN et al.,

Defendants.

23-CV-11020 (DEH)

**MEMORANDUM OPINION AND
ORDER**

DALE E. HO, United States District Judge:

Plaintiffs, Zhanybek Kubanychbekov and his wife, Asel Sagynbekova, filed this action

alleging unreasonable delays in the administrative processing of their Diversity Visa applications

against the following defendants: Antony J. Blinken, United States Secretary of State; Rena

Bitter, Assistant Secretary of State for Consular Affairs; Victoria Nuland, former Acting Deputy

Secretary of State; Richard C. Visek, Acting Legal Adviser, United States Department of State;

Lesslie Viguerie, United States Ambassador to Kyrgyzstan; Sonata Coulter, former Chargé

d'Affaires and Deputy Chief of Mission at the United States Embassy in Bishkek, Kyrgyz

Republic; Merrick Garland, United States Attorney General; and Alejandro Mayorkas, Secretary,

United States Department of Homeland Secretary, each sued in their official capacity

(collectively, "Defendants").  *See* Am. Compl. ¶¶ 1, 20-28, ECF No. 17; Defs.' Mem. of L. in

Resp. to Pls.' Req. for Writ of Mandamus 1 ("Defs.' Brief"), ECF No. 31.  Plaintiffs have

requested this Court grant a writ of mandamus "to compel Defendants to perform their duties and

complete the background checks for, and adjudication of, Plaintiffs'" visa applications.  Am.

Compl. ¶ 66.  For the following reasons, Plaintiffs' request for a writ of mandamus is

**DISMISSED** as moot.

**BACKGROUND**

The Immigration and Nationality Act[1] established the Diversity Visa Program ("DV"), a program designed to grant immigration visas to those who immigrate from a country where the rate of immigration to the Unites States has historically been low.  *See* 8 U.S.C. § 1153(c)(1); *Zapata v. I.N.S.*, 93 F. Supp. 2d 355, 357 (S.D.N.Y 2000).  Congress capped the total number of annual DV visas at 55,000.  8 U.S.C. §§ 1151(a)(3), 1151(e).  DV is administered by the United States Department of State, Kentucky Consular Center in Williamsburg, Kentucky.  *Kentucky Consular Center Information*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/immigrate/diversity-visa-program-entry/kentucky-consular-center-information.html (last visited Nov. 25, 2024).  These visas are made available to those selected randomly by lottery (conducted annually, typically in October), and selectees are then eligible to submit visa applications.  22 C.F.R. § 42.33(c).

Diversity Visa applicants must submit written applications and appear for an interview with a consular officer, as well as satisfy all statutory admissibility requirements.  *See Kentucky Consular Center Information*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/immigrate/diversity-visa-program-entry/kentucky-consular-center-information.html (last visited Nov. 25, 2024); *see also* 8 U.S.C. §§ 1153(c), 1182 (describing what makes applicants for visas eligible and ineligible, respectively), 1201(g) (directing consular officers to deny visas to those who are ineligible).  Those who are selected must complete the visa application and receive their visa prior to "the end of the specific fiscal year for which they were selected," or before September 30 of the year following the lottery selection.  *See* 8 U.S.C § 1154(a)(1)(I)(ii)(II); *Kracun v. United States*, 392 F. Supp. 2d 594, 595 (S.D.N.Y. 2005).  Thus, those who are

---

[1] Codified at Title 8 of the U.S. Code.

selected by the lottery and complete their applications are eligible for the DV up until September 30 of the following year or until the 55,000-visa cap has been reached.

When a visa application has been submitted and an interview conducted, the consular officer decides whether to grant the visa or deny it.  22 C.F.R. § 42.81.  If the consular officer decides that an applicant is ineligible, "[i]t is possible that a consular officer will reconsider a visa application refused under 221(g) [of the Immigration and Nationality Act[2]] at a later date, based on additional information or upon the resolution of administrative processing, and determine that the applicant is eligible."  *Administrative Processing Information*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited Nov. 25, 2024).  If the reason for the refusal can be overcome by supplying additional documentation, and the applicant "adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered."  22 C.F.R. § 42.81(e).

Plaintiffs, residents of Kyrgyzstan, entered into the 2023 DV program.  Repede Decl. ¶ 3, ECF No. 32.  They each filed separate applications, but prior to the selection were married, and so when only Kubanychbekov was selected in the lottery they were each able to file for visas under the same case.  *Id.* at ¶¶ 3, 6.  Plaintiffs appeared for an interview on January 30, 2023.  *Id.* at ¶ 6.  At the conclusion of the interview, the consular officer rejected their applications under 8 U.S.C. § 1201(g) after determining that they had not established eligibility.  *Id.* at ¶ 7.  Their applications were then referred for administrative processing to determine whether additional information would warrant reconsideration of the refusal.  *Id.*  Plaintiffs made four email inquiries about the status of their applications between February 16, 2023 and August 7, 2023.

---

[2] Codified at 8 U.S.C. § 1201(g).

Am. Compl. ¶¶ 38-41.  Plaintiffs state that they were informed that their application had been placed into administrative processing, but they do not provide the date on which they were informed of the additional processing.  *Id.* at ¶ 42.  On September 13, 2023, Plaintiffs were informed that the statutory maximum number of applications had been reached for the fiscal year and, as a result, no visas could be issued to Plaintiffs.  *Id.* at ¶ 43; *See also* Repede Decl. Ex. 1. ECF No. 32-1.  On March 13, 2024, Plaintiffs filed their Complaint.  *See* Am. Compl.

Plaintiffs allege that they "have not received any substantive updates regarding the adjudication of their applications, which has caused significant hardship, including financial strain, emotional distress, and prolonged separation from family members in the United States." Mem. of L. in Supp. of Pls.' Req. for Writ of Mandamus 2 ("Pls.' Brief"), ECF No. 28.  They therefore request a writ of mandamus from this Court. *Id.*

## LEGAL STANDARD

Federal district courts have original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  Mandamus is "a drastic and extraordinary remedy"[3] reserved only for exceptional circumstances. *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004).  Before the Court may exercise this power, the plaintiff must show "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008).

The Court must dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "if the court lacks the statutory or constitutional power to adjudicate" the case. *Cortlandt St. Recovery*

---

[3] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.

*Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 416-17 (2d. Cir. 2015). "A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when the parties lack a legally cognizable interest in the outcome" because they no longer "have a personal stake in the litigation." *Fox v. Bd. of Trs. of the State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994). Therefore, the plaintiff must have "a concrete stake—and not just a keen interest—in the outcome of the litigation." *Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 220 (2d Cir. 2018).

## DISCUSSION

Plaintiffs contend that the Department of State has failed to properly adjudicate their visa applications and ask the Court to compel them to do so. However, based on the facts alleged in the Complaint, their visa application has already been adjudicated. Plaintiffs' visa application was initially denied on January 30, 2023, and was put through additional administrative proceedings thereafter. *See* Am Compl. ¶ 42-43; Repede Decl. ¶ 7. On September 13, 2023, the government informed Plaintiffs that their visa applications had been denied because the maximum number of visas had been reached for that fiscal year. Repede Decl. ¶ 8. The notification in September that the denial would not be reconsidered represented the final decision on the issue. Plaintiffs have not shown that there are any pending applications that the United States has a "clear and nondiscretionary duty to adjudicate," which makes these claims moot. *See Lavariega v. Johnson*, No. 14 Civ. 5008, 2015 WL 5613206, at *3 (S.D.N.Y. Sept. 24, 2015); *see also Lihua Jiang v. Clinton*, No. 8 Civ. 4477, 2011 WL 5983353, at *3 (E.D.N.Y. Nov. 28, 2011). Accordingly, the Court dismisses this action for lack of subject matter jurisdiction.

Even if Plaintiffs' application had never been fully adjudicated, because Defendants "lack[] the statutory authority to grant the relief sought by plaintiffs under the DV program, [their] claims are now moot." *Mohamed v. Gonzalez*, 436 F.3d 79, 80 (2d Cir. 2006).  As the Second Circuit has noted, the statutes and regulations related to the DV program "impose a strict one-year time limit on the granting of diversity visas," and "despite the harsh consequences of this result, [courts] are compelled . . . to apply the unambiguous language of the operative statutory framework." *Id.* at 81.

Here, the State Department did not give an update related to the application for a substantial period of time, and did not complete administrative processing of the application to determine whether additional information would warrant reconsideration before it was too late. The Court is sympathetic to the consequences of that delay for Plaintiffs.  But "sheer bureaucratic ineptitude or intransigence" does not give "federal courts . . . the authority to hear these claims because, under the structure established by the applicable statutes, they are now moot." *Id.*

**CONCLUSION**

For the foregoing reasons, the Court **DISMISSES** the petition for writ of mandamus as moot.


Dated:  December 1, 2024
       New York, New York


_____
DALE E. HO
United States District Judge